# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| E.R.L., by and through her Next of Friend, John Doe,<br><br>Plaintiff,<br><br>v.<br><br>Adoption Specialist and Adoption Supervisor,<br><br>Defendants. | C/A No.: 9:21-cv-479-RMG<br><br>**COMPLAINT**<br>(*Jury Trial Demanded*) |

The Plaintiff, complaining of the Defendants, would respectfully show this Court the following:

### I.    THE PARTIES.

**Plaintiff.**

1. That Plaintiff **E.R.L.** was born in Ohio in 2011. E.R.L. is a citizen and resident of Dorchester County in the State of South Carolina.

2. As E.R.L. is a minor child, this action is brought on her behalf by her next of Friend, **John Doe**. John Doe is E.R.L.'s adoptive father and a citizen and resident of Dorchester County in the State of South Carolina.

**SCDSS Defendants**

3. The South Carolina Department of Social Services (SCDSS) is an agency of the State of South Carolina created by the General Assembly of the State of South Carolina. SCDSS is responsible for ensuring that the children in its custody are safe and are receiving adequate care and treatment in accordance with applicable legal standards.

1

4. Defendant **Adoption Specialist** is a SCDSS employee at Lowcountry Region Adoptions in Beaufort County in the State of South Carolina and a resident of South Carolina during the times alleged herein. Defendant Adoption Specialist's identify is unknown at this time. She was the assigned adoption specialist for E.R.L. during E.R.L.'s time in SCDSS custody from April 2015 through her adoption in November 2016. As E.R.L.'s adoption specialist, Defendant Adoption Specialist was responsible for monitoring E.R.L.'s safety and well-being while she was in SCDSS custody in accordance with applicable legal standards and Defendant Adoption Specialist had a duty to remove E.R.L. from a placement if a placement was harmful or dangerous to the child.

5. Defendant **Adoption Specialist Supervisor** was a SCDSS employee at Lowcountry Region Adoptions in Beaufort County in the State of South Carolina and a resident of South Carolina during the times alleged herein. Defendant Adoption Specialist Supervisor was Defendant Adoption Specialist's supervisor while E.R.L. was in SCDSS custody from April 2015 through her adoption in November 2016. Defendant Adoption Specialist Supervisor was responsible for supervising her caseworkers as well as the safety and well-being of their clients, to include E.R.L., in accordance with applicable legal standards and Defendant Adoption Specialist Supervisor had a duty to remove E.R.L. from a placement i if a placement was harmful or dangerous to the child.

6. Each of these SCDSS employees are sued in their individual, or personal, capacity.

## II.     JURISDICTION AND VENUE.

7. Plaintiff incorporates paragraphs 1-6 as if it were incorporated herein verbatim.

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, Federal Question.

9. Venue is proper in this Court under 28 U.S.C. § 121(11), as Plaintiff was in the custody of the South Carolina Department of Social Services and placed in Beaufort County, South Carolina and the acts and omissions alleged herein occurred in Beaufort County, South Carolina.

### III. BACKGROUND.

10. Plaintiff incorporates paragraphs 1-9 as if it were incorporated herein verbatim.

11. Plaintiff E.R.L. sues to recover compensatory and punitive damages for injuries caused by Defendants' tortious conduct and violations of her federal civil rights.

12. At the time this complaint was filed, Plaintiff E.R.L. was under the age of eighteen (18).

**a. Relevant facts about Plaintiff E.R.L. and her siblings.**

13. On May 9, 2005, E.R.L.'s sister, A.M.L., almost five years old, fractured her right tibia and fibula bone.[1] A.M.L. had previously fractured her left elbow on March 17, 2005.[2] A physician ordered a full skeletal survey of A.M.L. to be conducted.[3] A.M.L. and her siblings were taken into the custody of the State of Ohio in the early morning hours of May 10, 2005.[4]

---

[1] FCA Bates No. 000015, 004984-004996, 004778-004790.
[2] FCA Bates No. 004800-004808, 004813-004814.
[3] FCA Bates No. 004781, 004983.
[4] FCA Bates No. 004786, 4737.

14. In June 2005, E.R.L.'s sister, J.J.L. was born and upon her discharge from the hospital on June 22, 2005, she was placed in the custody of the State of Ohio .[5] A brother was born in August 2006 and he was placed in foster care with J.J.L.[6]

15. On January 26, 2009 A.M.L., J.J.L., and their siblings were placed in the permanent custody of the State of Ohio.[7] The Ohio Family Court placed the children in the custody of Franklin County Children Services.[8]

16. Franklin County Children Services placed A.M.L., J.J.L., and their three siblings, R.M., J.M., and T.M., in Bluffton, South Carolina through the Interstate Compact on the Placement of Children, transferring custody of the children to the South Carolina Department of Social Services.

17. The children were placed in the home of Yulanda Mitchell and Herbert Bernard Mitchell, Sr. at 86 Pine Forest Drive, Bluffton, South Carolina. Upon information and belief, the adult son of Yulanda Mitchell and Herbert Mitchell also lived in the three-bedroom home of 1,639 square feet. The home lacked the necessary space for five children.

18. Public records demonstrate that prior to and during the adoption Yulanda Mitchell and Herbert Bernard Mitchell, Sr. had been sued by several payday loan vendors and their home was in foreclosure during the time SCDSS placed the five children in the home for adoption.

---

[5] FCA Bates No. 004369, 004646-004647, 004659-004661, 004369.
[6] FCA Bates No. 000015.
[7] FCA Bates No. 000015.
[8] FCA Bates No. 000016.

19. Prior to the placement of E.R.L.'s siblings, a previous adoptive placement was disrupted after Yulanda Mitchell harmed the child. SCDSS placed Yulanda Mitchell's name on the South Carolina Registry of Abuse and Neglect.

20. Yulanda Mitchell was employed at Michael C. Riley Elementary School in Bluffton, South Carolina as a teacher's assistant. She used her position and contacts in both the Beaufort County School District and Beaufort County Department of Social Services to evade investigation of the abuse of these children.

21. When SCDSS places children in a pre-adoptive home, the Agency is required to investigate the family's financial circumstances, the composition of the family, to include all adults living in the home, and assess the home itself to determine whether it is suitable for all of the children.

22. By August 2010, SCDSS received a report indicating that a female minor child was beaten the previous night and left with severe bruising on the buttocks and the back of her thighs.[9] The Mitchells told SCDSS that J.J.L. had a rash on her buttocks from sitting in wet diapers because "she does not tell anyone she is wet/soiled."[10]

23. In January 2011, a report was made to SCDSS that A.M.L. disclosed she was hit by a belt.[11]

24. In April 2012, a report to SCDSS alleged R.M. had a bruise on his arm as a result of being hit with a shoe by his mother. It had also been alleged that the children were hoarding food.[12]

---

[9] FCA Bates No. 000017.
[10] FCA Bates No. 000017.
[11] FCA Bates No. 000017.
[12] FCA Bates No. 000017.

25. By April 4, 2012, A.M.L. had only grown two inches and gained two pounds since her placement with the Mitchells.[13] J.J.L. had only grown 1.9 inches and gained 2 lb., 8 oz. since her placement with the Mitchell's.[14] Their siblings showed similar failure to thrive.

26. In September 2013 R.M. disclosed Yulanda Mitchell had picked him up over her head and dropped him to the floor 20 times because he had a bad day in school.[15] R.M. had a bump on his head and a temperature of 102 degrees with a bilateral ear infection.[16] R.M. stated his body ached and it sometimes hurt to breathe but he had no marks or other bruises on his body.[17] During an interview, R.M. stated that food was withheld from him as punishment in the home.[18] SCDSS closed its file on November 6, 2013.[19]

27. By November 6, 2013, A.M.L. had only grown three inches and gained less than four pounds since her placement with the Mitchells.[20] J.J.L. had only grown 1.9 inches and gained 2 lb. since her placement with the Mitchell's.[21] Their siblings showed similar failure to thrive.

---

[13] FCA Bates No. 62, 65, 68, 72, 75, 80, 81, 84, 87, 90, 93, 96, 125, 126, 128, 129, 130, 132-133, 135, 136, 137-139, 1168, 4893, 4897.
[14] FCA Bates No. 131, 1654, 1656, 1659, 1661, 1664, 1666, 1668, 1670, 1672, 1675, 1677, 1680, 1682, 1685, 1687-1688, 1726, 1728, 1729-1730, 1731, 1734, 1735, 1736, 1737, 1738, 1740, 1775, 1777, 1778-1779, 1780, 1783, 1784, 1785, 1786, 1787, 1789, 2742, 4483-4484, 4487.
[15] FCA Bates No. 000017.
[16] FCA Bates No. 000017
[17] FCA Bates No. 000017.
[18] FCA Bates No. 000017.
[19] FCA Bates No. 000017.
[20] FCA Bates No. 62, 65, 68, 72, 75, 80, 81, 84, 87, 90, 93, 96, 125, 126, 128, 129, 130, 132-133, 135, 136, 137-139, 1168, 4893, 4897.
[21] FCA Bates No. 131, 1654, 1656, 1659, 1661, 1664, 1666, 1668, 1670, 1672, 1675, 1677, 1680, 1682, 1685, 1687-1688, 1726, 1728, 1729-1730, 1731, 1734, 1735, 1736, 1737, 1738, 1740, 1775, 1777, 1778-1779, 1780, 1783, 1784, 1785, 1786, 1787, 1789, 2742, 4483-4484, 4487.

28. In January 2015, a report was made to SCDSS that the children were being physically abused and the children were constantly stealing food at school.[22] The children were forced to sleep on the floor and sometimes placed in a dark closet.[23] SCDSS closed the case in March 2015.[24]

29. By January 2015, A.M.L. had only grown five inches and gained less than seven pounds since her placement with the Mitchells over the past five years.[25] J.J.L. had only grown 3.5 inches and gained 6.2 lb. since her placement with the Mitchell's in 2010.[26] Their siblings showed similar failure to thrive.

30. Inexplicably, SCDSS decided to assist the State of Ohio in placing E.R.L. into an adoptive placement at the Mitchell home in April 2015.

31. Again, SCDSS ignored the Mitchell's financial circumstances, the lack of suitability of the 1,639 square foot home to house three adults and six children in three bedrooms. SCDSS also ignored the troubling reports of abuse and neglect of E.R.L.'s siblings before her placement in the home.

32. In March 2016, a report was made to SCDSS that R.M. disclosed that he has been eating food out of the garbage cans at school after other children discarded the items and that he only gets one meal at home as a consequence for stealing food.[27] Another report was made to SCDSS in April 2016 regarding T.M. stealing food.[28]

---

[22] FCA Bates No. 000017.
[23] FCA Bates No. 000017.
[24] FCA Bates No. 000018.
[25] FCA Bates No. 62, 65, 68, 72, 75, 80, 81, 84, 87, 90, 93, 96, 125, 126, 128, 129, 130, 132-133, 135, 136, 137-139, 1168, 4893, 4897.
[26] FCA Bates No. 131, 1654, 1656, 1659, 1661, 1664, 1666, 1668, 1670, 1672, 1675, 1677, 1680, 1682, 1685, 1687-1688, 1726, 1728, 1729-1730, 1731, 1734, 1735, 1736, 1737, 1738, 1740, 1775, 1777, 1778-1779, 1780, 1783, 1784, 1785, 1786, 1787, 1789, 2742, 4483-4484, 4487.
[27] FCA Bates No. 000018.
[28] FCA Bates No. 000018.

33. By April 2016, A.M.L. had only grown 6 ¼ inches and gained three pounds since her placement with the Mitchells over the past six years, since 2010.[29] J.J.L. had only grown 3 ¾ inches and gained 7.4 lb. since her placement with the Mitchell's in 2010.[30] E.R.L. did not grow any taller over the past year and actually lost weight since she came from Ohio.[31] Their siblings showed similar failure to thrive.

34. On November 3, 2016 E.R.L. and her siblings A.M.L., J.J.L., R.M., J.M., and T.M. entered foster care when they were placed in Emergency Protective Custody.[32] R.M. had written a note to his school teacher in October 2016 disclosing that he and his siblings were being beaten at home with a hanger, belt, and ruler.[33] He reported that the beatings left bruises on his legs and his adoptive mother would keep him home from school the next day or until the marks went away.[34] J.J.L. reported that one of her oldest adoptive brothers, who were biological children of the adoptive parents, would be told by the adoptive mother to beat J.J.L. because she stole food.[35] R.M. further disclosed feeling unsafe in the home, being constantly hungry due to food restrictions, and being forced to sleep on the floor without covers or pillows.[36]

35. The children also disclosed the following:

> One of the children was caught stealing food at school twice and had a history of stealing food from classmates, classrooms, and from garbage cans; the children would be sent to their rooms without dinner when they got in trouble at home or at school; the children were forbidden to have milk, dairy products or tomato

---

[29] FCA Bates No. 62, 65, 68, 72, 75, 80, 81, 84, 87, 90, 93, 96, 125, 126, 128, 129, 130, 132-133, 135, 136, 137-139, 1168, 4893, 4897.
[30] FCA Bates No. 131, 1654, 1656, 1659, 1661, 1664, 1666, 1668, 1670, 1672, 1675, 1677, 1680, 1682, 1685, 1687-1688, 1726, 1728, 1729-1730, 1731, 1734, 1735, 1736, 1737, 1738, 1740, 1775, 1777, 1778-1779, 1780, 1783, 1784, 1785, 1786, 1787, 1789, 2742, 4483-4484, 4487.
[31] FCA Bates No. 1085, 1087, 1091, 1092.
[32] FCA Bates No. 000298-000303.
[33] FCA Bates No. 000018.
[34] FCA Bates No. 000018.
[35] FCA Bates No. 000018.
[36] FCA Bates No. 000018.

products (the adoptive parents claimed the children were allergic to these which is untrue); the children were forced to regularly sleep on the floor without bedding; a forensic examination revealed patterned scars on two of the children's bodies; medical records indicated five out of the six siblings fell "far below" the first percentile for height and weight.[37]

36. A Probable Cause Hearing was held by the Beaufort County Family Court on November 7, 2016 and the Court found probable cause for E.R.L., A.M.L., J.J.L., R.M., J.M., and T.M. to remain in SCDSS's custody. The Court found probable cause based upon the following facts:

> There was probable cause for law enforcement to take emergency protective custody and for the South Carolina Department of Social Services (SCDSS) to assume legal custody of the children because SCDSS received a report on October 26, 2016 alleging that one of the minor children was caught stealing food at school for the second time in two days. The child reportedly has a history of stealing food from classmates and classrooms and taking food out of garbage cans. All of the minor children in the home were interviewed the following day. The children alleged that they are sent to their rooms and not allowed to eat dinner any time they get in trouble at home or school. The children also alleged they are hit with a belt, ruler, or hanger when they get in trouble. Three of the children had forensic medical examinations on November 1, 2016. These exams were conducted by Kristin Dalton, CPNP. Ms. Dalton reviewed records for five of the six children and discovered that the children's heights and weights fall far below the first percentile. Ms. Dalton also noted that two of the children examined have patterned scars on their bodies. SCDSS established a prima facie case based on the foregoing allegations.[38]

37. On July 24, 2017, in the matter of *South Carolina Department of Social Services v. Yulanda Mitchell a/k/a Yolanda Mitchell and Herbert Mitchell*, Docket No. 2016-DR-07-01364, the Beaufort County Family Court made the following finding:

> …T.M., J.M., A.M.L., J.J.L., R.M., and E.R.L. were physically abused and willfully and recklessly neglected by Yulanda Mitchell a/k/a/ Yolanda Mitchell… T.M., J.M., A.M.L., J.J.L., R.M., and E.R.L. were willfully and recklessly neglected by Herbert Mitchell.[39]

---

[37] FCA Bates No. 000018.
[38] FCA Bates No. 000300.
[39] FCA Bates No. 003335.

38. That as a direct and proximate result of Defendants' acts and ommissions, E.R.L. suffered the following injuries: violation of her constitutional right under the Fourteenth Amendment to the United States Constitution to a safe and secure placement, violation of her constitutional right under the Fourteenth Amendment to the United States Constitution to safety and adequate care, great and permanent mental harm and injury, physical pain from the battery, emotional distress, alteration of her lifestyle, psychological trauma, apprehension, anxiety, depression, embarrassment, shame, and a loss of enjoyment of life, all resulting from the abuse she suffered, which has and will in the future cause her to spend money for mental health treatment services.

### First Cause of Action
### Violation of Fourteenth Amendment Right to a Safe and Secure Placement
**(First Failure to Protect Occurrence Against Adoption Specialist and Adoption Supervisor)**

39. Plaintiff incorporates paragraphs 1-37 as if it were incorporated herein verbatim.

40. That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to a safe and secure placement.

41. That under 42 U.S.C. § 1983, persons acting under color of state law are liable for violating constitutional rights.

42. That SCDSS's employees, Defendants Adoption Specialist and Adoption Supervisor, acting in their personal capacities under color of South Carolina Law, were, from April 2015 through her adoption in November 2016, deliberately indifferent to E.R.L.'s constitutional right to a safe and secure foster care placement so as to shock the conscience. They had notice of the dangers, which are listed above in paragraphs 16-37.

43. That Defendants Adoption Specialist and Adoption Supervisor ignored these dangers notwithstanding their notice of them.

44. That these failures were part of these SCDSS's policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

45. That E.R.L. suffered the attacks and starvation and the injuries set out above as the direct and proximate result of the constitutional violations by Defendants Adoption Specialist and Adoption Supervisor.

46. E.R.L. asks the Court to award damages, punitive damages, and attorneys' fees and cost.

**Second Cause of Action**
**Violation of Fourteenth Amendment Right to Adequate Care**
**(Failure to Treat Occurrence Against Adoption Specialist and Adoption Supervisor)**

47. Plaintiff incorporates paragraphs 1-45 as if it were incorporated herein verbatim.

48. That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and general well-being.

49. That under 42 U.S.C. § 1983, persons acting under color of state law are liable for violating constitutional rights.

50. From April 2015 through her adoption in November 2016 Defendants Adoption Specialist and Adoption Supervisor had notice of E.R.L.'s need for mental health treatment upon notification of the facts which are listed above in paragraphs 16-37.

51. Defendants Adoption Specialist and Adoption Supervisor had notice of the danger in failing to provide mental health services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

52. That these failures were part of these Defendants Adoption Specialist and Adoption Supervisor's policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

53. Defendants Adoption Specialist and Adoption Supervisor had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like E.R.L. who were physically abused and starved and in need of medical attention, yet they chose to ignore these dangers notwithstanding the notice.

54. That E.R.L. suffered the injuries set out in this Complaint as the direct and proximate result of the constitutional violations by Defendants Adoption Specialist and Adoption Supervisor.

55. E.R.L. asks the Court to award damages, punitive damages, and attorneys' fees and cost.

WHEREFORE, Plaintiff requests the Court enter judgment in her favor for:

A. Damages in the appropriate amount;

B. Punitive damages as are appropriate and when allowed by statute or the common law;

C. Attorneys' fees, costs, expenses, and disbursements of this action when allowed by statute or the common law;

D. Interest; and

E. Such other and further relief as is just and proper.

Respectfully Submitted,

                              <u>s//Robert J. Butcher</u>
                              Robert J. Butcher
                              Federal Bar No. 9767
                              Deborah J. Butcher
                              Federal Bar No. 10731
                              The Foster Care Abuse Law Firm, PA
                              507 Walnut Street
                              Camden, South Carolina 29020
                              P.O. Box 610
                              Camden, South Carolina 29021
                              Telephone: (803) 432-7599
                              Facsimile: (803) 432-7499
                              Email: <u>rbutcher@camdensc-law.com</u>

Camden, South Carolina
February 12, 2021