**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| E.R.L., by and through her Next of Friend, John Doe, ) ) ) Plaintiff, ) ) v. ) ) ) Adoption Advocacy, Inc., June Bond, ) Joe Hayes, and Amy Carr, ) ) Defendants. ) ) | Civil Action No.: 9:21-479-RMG **ORDER AND OPINION** |

Before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint (Dkt. No. 37). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss.

**I.     Background**

This case arises from the placement, adoption, and later abuse of minor Plaintiff E.R.L. by her adoptive family, Yulanda and Herbert Mitchell ("the Mitchells"). Plaintiff's Second Amended Complaint (the "SAC") brings a § 1983 constitutional claim and two state law claims against Defendants Adoption Advocacy, Inc. ("Adoption Advocacy") and two of its employees (collectively "Defendants") for their role in placing and monitoring Plaintiff in the Mitchell home.[1] Plaintiff asserts Defendants placed her in an abusive home and violated her constitutional right to a safe and secure foster home placement. *See generally* (Dkt. No. 33).

---

[1] On July 27, 2021, Plaintiff dismissed without prejudice all claims against Defendant Amy Carr. (Dkt. No. 49).

On June 9, 2021, Defendants moved to dismiss Plaintiff's SAC. (Dkt. No. 37).  On July 6, 2021, Plaintiff filed a response in opposition. (Dkt. No. 41).[2]

On July 6, 2021, Plaintiff moved for leave to file a separate brief and exhibits regarding whether "the function of care for foster children" is exclusively a state prerogative. (Dkt. No. 42). Defendants opposed Plaintiff's motion. (Dkt. No. 44).

On July 20, 2021, the Court granted Plaintiff leave to file a supplemental brief on the requested topic. (Dkt. No. 46).

On August 3, 2021, Plaintiff filed its supplemental briefing. (Dkt. No. 51).  On August 6, 2021, Defendants filed a response to this briefing. (Dkt. No. 52).

Defendants' motion is fully briefed and ripe for disposition.

**II.     Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted."  A claim survives the motion if the complaint provides enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This is a test of the legal sufficiency of the complaint and, therefore, Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

---

[2] To be precise, the Court struck Plaintiff's original opposition to Defendants' motion to dismiss the SAC. *See* (Dkt. No. 40) (finding Plaintiff's 2,249-page response—a response which contained roughly 95 pages of legal argument—violated Local Rule 7.05 (limiting initial memoranda of law to 35 pages) but granting Plaintiff leave to file an amended response in opposition).  Plaintiff subsequently filed an opposition to Defendants' motion to dismiss which complied with applicable local rules. *See* (Dkt. No. 41).

Instead, the district court's "inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). For that analysis, the district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"; however, it must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### III.   Discussion

In its motion, Defendants argue, in pertinent part, that Plaintiff's § 1983 claim for violation of Plaintiff's Fourteenth Amendment's right to a safe and secure placement must be dismissed because the SAC does not adequately allege that Defendants—a private adoption agency and two of its employees—were acting under color of law. (Dkt. No. 37 at 7-10). Defendants further argue that even if they were acting under color of law, Defendants would be entitled to qualified immunity. (*Id.* at 10-11). In opposition, Plaintiff argues that Defendants are state actors because Defendants were engaged in a "traditionally exclusive public function." *See* (Dkt. No. 41 at 6-7, 11-16).

The SAC alleges Adoption Advocacy is a "private adoption agency registered with the Secretary of State of South Carolina as a nonprofit corporation." SAC, (Dkt. No. 33 ¶ 3). Plaintiff alleges that Franklin County Children Services is a "public children services agency" and "has assumed the powers and duties of the children services function for Franklin County, Ohio." (*Id.* ¶ 16) (internal citations omitted). Plaintiff alleges that minor E.R.L. was a ward of the State of Ohio and, specifically, Franklin County. (*Id.* ¶¶ 16, 22). Plaintiff alleges "Franklin County

Children Services entrusted Adoption Advocacy, Inc. and its employees with implementing the concomitant constitutional duty to ensure that children placed in a home was safe [sic] and receiving adequate treatment on a day-to-day basis." (*Id.* ¶ 22). Plaintiff alleges that Franklin County Children Services paid Defendants "to protect E.R.L. from harm." (*Id.* ¶ 49). Plaintiff alleges that E.R.L. was placed with and suffered harm at the hands of the Mitchells—individuals Defendants should have known were unfit foster parents. (*Id.* ¶ 128).

In deciding Defendants' motion, the Court finds instructive *Dahn v. Adoption Alliance*, 164 F. Supp. 3d 1294 (D. Colo. 2016) (dismissing, in relevant part, § 1983 claims against a private adoption agency and its employees), *appealed on other grounds and reversed in part sub nom. Dahn v. Amedei*, 867 F.3d 1178 (10th Cir. 2017) (finding the district court erred in holding plaintiff had a "special relationship" with two Colorado officials and further holding that the trial court erred by not finding said officials were entitled to qualified immunity). In *Dahn* the plaintiff sued, *inter alia*, a private adoption agency—Adoption Alliance—and two of its employees responsible for monitoring plaintiff's placement with a prospective adoptive father. 164 F. Supp. 3d at 1300 (noting both the State of Oklahoma and the State of Colorado had contracted with Adoption Alliance to "monitor Plaintiff's foster placement" and that Adoption Alliance had "committed itself to assuming these roles, and a variety of obligations under the [Interstate Compact on the Placement of Children], through its contract with the State of Colorado"). Plaintiff alleged Adoption Alliance was deliberately indifferent in monitoring Plaintiff's placement. *Id.* 1301. Adoption Alliance moved to dismiss plaintiff's § 1983 claims against it and its employees on the basis that it was not a state actor. *Id.* at 1302-03. In finding that "the allegations in Plaintiff's Amended Complaint [were] insufficient to state a claim against" Adoption Alliance, the *Dahn*

4

court noted that while some "lower courts have found" "the adoption of children . . . an exclusive state function," "[c]ourts in other jurisdictions"—such as those of the Fourth Circuit—had not. *Id.* at 1303-04 (*citing Milburn by Milburn v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 871 F.2d 474, 479 (4th Cir.1989) ("The care of foster children is not traditionally the exclusive prerogative of the State...."); *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (affirming district court finding that public function test not met because "the [S]tate exercised no encouragement of the Hogues' actions, nor is foster care traditionally an exclusive [S]tate prerogative.") (alterations in original); *Phelan ex rel. Phelan v. Torres*, 843 F.Supp.2d 259, 271 (E.D.N.Y.2011) ("[F]oster care agencies do not perform a function that has been 'traditionally *exclusively* reserved to the State.'")). The *Dahn* court found that "Plaintiff's Amended Complaint contains no allegations that Adoption Alliance was the exclusive means to adopt out-of-state children, nor does it contain allegations that there is exclusive state involvement in the adoption of children in Colorado, either now or in the past." *Id.* at 1304 (citing *Johnson v. Rodrigues*, 293 F.3d 1196 (10th Cir. 2002) (finding a private adoption agency was not a state actor as it was not performing a service "traditionally the exclusive prerogative of the state")). The *Dahn* court distinguished cases which had come to a contrary conclusion, most pertinently *Smith v. Beasley*, 775 F. Supp. 2d 1344, 1353 (M.D. Fla. 2011) noting "[i]n *Beasley*, the court found it determinative that the legislature in Florida had stated by statute that 'the state has traditionally provided foster care services to children who have been the responsibility of the state'" and that "no such statutory language exists under Colorado law." *Id.* at 1304.

The Court finds that Plaintiff fails to state a claim under the Fourteenth Amendment for failure to secure a safe placement because Plaintiff has not adequately alleged that Defendants are

state actors. While the Fourth Circuit has held that where "a state involuntarily removes a child from her home, thereby taking the child into its custody and care, the state has taken an affirmative act to restrain the child's liberty, triggering the protections of the Due Process Clause and imposing 'some responsibility for [the child's] safety and general well-being,'" *Doe ex. rel. Johnson v. South Carolina Dept. of Social Services*, 597 F.3d 163, 175 (4th Cir. 2010) (citing *DeShaney v. Winnebago County Dep't of Soc Servs.*, 489 U.S. 189, 2000 (1989)), the Fourth Circuit has also held that the "[t]he care of foster children is not traditionally the exclusive prerogative of the State," *Milburn by Milburn v. Anne Arundel County Dept. of Social Services*, 871 F.2d 474, 478-79 (1989) ("It is not enough that an institution is highly regulated and subsidized by a state. If the state in its regulatory or subsidizing function does not order or cause the action complained of, and the function is not one traditionally reserved to the state, there is no state action."). Here, like in *Dahn*, while Plaintiff alleges that Adoption Advocacy's activities are highly regulated and that Adoption Advocacy is employed by a state to facilitate foster placements, it does not allege that Adoption Advocacy is the exclusive means of adopting children either in Ohio or South Carolina. (Dkt. No. 33 ¶¶ 17, 49). At bottom, Plaintiff's allegations do not allege plausibly that Defendants are state actors or that foster care is traditionally the exclusive function of the State of South Carolina. *Milburn*, 871 F.2d at 478-79; *Dahn,* 164 F. Supp. 3d at 1303-04; *see Beasley*, 775 F. Supp. 2d at 1353 (finding determinative that the Florida legislature had stated by statute that "the state has traditionally provided foster care services to children who have been the responsibility of the state"); *see also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) ("While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'"); *Marsh v. Alabama*, 326 U.S. 501 (1946) (operation of company town); *Terry v.*

*Adams*, 345 U.S. 461, 468-70 (1953) (administering of elections of public officials); *Evans v. Newton*, 382 U.S. 296, 298-302 (1966) (management of a city park).[3]

Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's § 1983 claim.

Having dismissed Plaintiff's § 1983 claim, only Plaintiff's state law claims remain. (Dkt. No. 33 at 36-42). Because there are no federal claims remaining, the Court declines to exercise supplemental jurisdiction over these state law claims.

As noted by the Fourth Circuit, "once a district court has dismissed the federal claims in an action, it maintains 'wide discretion' to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n. 4 (4th Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 353-54 (1988)). A district court may decline to exercise supplemental jurisdiction over a claim under 28 U.S.C. § 1367(a) "if ... (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C § 1367(c)(3). When determining whether to exercise supplemental jurisdiction over state law claims, a district court must consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Cohill*, 484 U.S. at 350 n.7).

---

[3] The Court has considered Plaintiff's supplemental briefing on whether foster care is traditionally an exclusive state function. (Dkt. No. 51). The Court finds Plaintiff's briefing unpersuasive, however, as it lacks a cogent argument explaining why *Milburn*'s pronouncement regarding foster care is inaccurate. *See, e.g.*, (*id.* at 2) (noting "churches, charities, communities, friends, and extended family *have always been involved* in raising many of our dependent children") (emphasis added); (*id.* at 11-12) (listing various South Carolina statutes from 1880 through 1952 which purportedly regulate the "placement and disposal of foster children" but nowhere articulating why or how *foster care itself* is the "exclusive prerogative" of the State of South Carolina).

Here, the Court finds that no party would be inconvenienced or prejudiced by the Court declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. No underlying issues of federal policy are involved in Plaintiff's state law claims—this action sounding in negligence and violation of the South Carolina Solicitation of Charitable Funds Act. The comity factor and considerations of judicial economy weigh in favor of declining to exercise supplemental jurisdiction. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See, e.g.*, *Brown v. Phylbeck*, No. 4:18-cv-202-FL, 2019 WL 2745758, at *5 (E.D.N.C. July 1, 2019) ("[W]here plaintiff's state law claims substantially predominate over the federal claims in this action grounded in alleged attorney malpractice, the court in its discretion declines to exercise supplemental jurisdiction over plaintiff's state law claims."), *appeal dismissed sub nom. Brown v. Philbeck*, 788 F. App'x 913 (4th Cir. 2019); *see also Johnson v. Ozmint*, No. 9:08-cv-0431-PMD-BM, 2009 WL 252152, at *6 (D.S.C. Feb. 2, 2009) (dismissing federal claims and noting, "With respect to these remaining state law causes of action, when federal claims presented in a case which has been removed to federal court from state court are dismissed, the case should be remanded to state court for resolution of any remaining state law claims....").

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss the SAC. (Dkt. No. 37). Defendants' motion is **GRANTED** to the extent that Plaintiff's § 1983 claim is **DISMISSED WITH PREJUDICE**. Plaintiff's remaining claims against Defendants are **DISMISSED WITHOUT PREJUDICE**. Defendants' motion is otherwise **DENIED.**

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

August 9, 2021
Charleston, South Carolina