IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

- - -

| | |
|---|---|
| E.R.L., by and through her Next of Friend, John Doe, | : 9: 21-cv-00479<br>: 9: 22-cv-1874 |
| Plaintiff, | : February 28, 2023 |
| versus | : (Pages 1 - 22) |
| ADOPTION SPECIALIST, et al. | : |
| Defendants. | |

- - -

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE RICHARD M. GERGEL
UNITED STATES DISTRICT COURT JUDGE

- - -

**A P P E A R A N C E S:**

| | |
|---|---|
| For the Plaintiff: | ROBERT J. BUTCHER<br>Camden Law Firm<br>PO Box 610<br>Camden, SC 29021 |
| For Defendant Adoption Advocacy: | TAYLOR JOY STEWART<br>Lewis Brisbois Bisgaard and Smith<br>24 Drayton Street, Suite 300<br>Savannah, GA 31401 |
| For Defendant Wright Directions: | DANIEL R. FUERST<br>Moore & VanAllen<br>78 Wentworth Street,<br>Charleston, SC 29401 |
| | LIZ FULTON MORRISON<br>Whelan Mellen & Norris, LLC<br>89 Broad Street<br>Charleston, SC 29401 |
| For Defendant DSS: | ROBERT SCOTT DENNIS<br>Howell, Gibson & Hughes, P.A.<br>25 Rue Du Bois, Lady's Island,<br>Beaufort, SC 29901 |

| | |
|---|---|
| For Defendant Franklin Children Services: | PETER SHAHID<br>Shahid Law Office<br>145 King Street, Suite 309<br>Charleston, SC 29401 |
| Court Reporter: | LISA D. SMITH, RPR, CRR<br>Official Court Reporter<br>P.O. Box 835<br>Charleston, SC 29401 |

(Proceedings recorded by mechanical stenography, transcript produced by computer.)

*(The following proceedings commenced at 3:00 p.m.)*

THE COURT: Please be seated.

Okay. This is a matter of several status conferences on several matters: ERL vs. Adoption Advocacy, 9: 21-479; and AML vs. Department of Social Services and others, 9: 22-1874. And I won't be real surprised if somebody doesn't have a question about some of these other cases as well.

Could counsel for the plaintiff identify himself for the record, please.

MR. BUTCHER: Robert Butcher, for the plaintiff, your Honor.

THE COURT: Very good, Mr. Butcher.

Okay. And counsel for Adoption Advocacy?

MS. STEWART: Good afternoon, your Honor. Taylor Stewart, for Adoption Advocacy.

THE COURT: Hold on just a second here. Your name again? Taylor?

MS. STEWART: Taylor Stewart.

THE COURT: Yes, ma'am. I see. And you're now representing -- are you representing Adoption Advocacy and these other individual parties in all the -- in both cases?

MS. STEWART: Yes, your Honor.

THE COURT: Because I think you made an appearance in 9: 22-1874, but not in the 9: 21-479. I will not blame you for being confused. I'm constantly confused by this case.

But we may end up consolidating them here today.

Okay. And Mr. Parker is out; is that correct? He's terminated?

MS. STEWART: Yes, your Honor.

THE COURT: Very good.

Okay. Is somebody here from Wright Directions?

MR. FUERST: Yes, your Honor. Daniel Fuerst and Liz Morrison.

THE COURT: Okay. Now, you may not be aware of this. A couple hours ago, I entered an order. The only basis of federal jurisdiction was the RICO claim, which I think all of us recognized, including Mr. Butcher, had no merit, and there was no independent federal jurisdiction.

Did I understand you wanted to raise some issue with me or something?

MR. FUERST: Yes, your Honor.

THE COURT: Tell me, Mr. Fuerst.

MR. FUERST: We're just looking for guidance on what is being remanded, because, right now, the operative complaint against us is the third amended complaint. Plaintiff's counsel had moved for a fourth amended complaint, which your Honor mooted at the last status conference.

THE COURT: I did. And I think it's a very fair question, because the issue is sort of, well, what is the -- you know, what went? I tried to identify it by the causes of

action, because I thought that was the cleanest way to do it. You know, it's complicated when you're supposed to make a short and plain statement and you file a 323-paged complaint, okay? It's complicated. And I think you might want -- you know, when we send it back, you might first move before the state court for Mr. Butcher to file an amended complaint to clarify what his claims are against the Wright defendants. There's not going to be a RICO claim, so you're down to the state common law statutory -- unfair trade practice claims.

And, you know, I'm not handling that matter. So, what specifically can I -- would you like me to address?

MR. FUERST: I was going to ask if the Court would allow plaintiff to do a fourth amended complaint for --

THE COURT: No. I'm not doing that. I'm not doing that because it's not here anymore. I've sent it to state court. I do think it's an appropriate thing to ask the state judge. And, you know, I think a fair question, which I didn't want to get into is: Does the plaintiff in this particular matter have standing on any of these issues? And to the extent services weren't provided to the children that were supposed to be provided, then there might be a claim. But, certainly, the issue that I caused the RICO claim on was trying to basically be a relator in a false claims case, and the children couldn't do that.

So, you know, I know I had some trepidation when I

sent these cases back without a complaint, but I didn't know any other way to do it. And I really didn't want Mr. Butcher to have to prepare another complaint. I didn't know what I'd get.

So, yes, sir, Mr. Butcher.

MR. BUTCHER: So, a couple of these, when you did split them off, you created new case numbers under the district.

THE COURT: I did. I did.

MR. BUTCHER: So, was your intention for Jasper County to create new case numbers as they got remanded?

THE COURT: Yes. Yes. They'll get their own cases. Here's what I was trying to do. I'll be honest, Mr. Butcher, you're a little long on the complaints, and I didn't want to give you a chance to create new issues and all this stuff in front of me. So, what I did was, you know, I said: Here are the causes of action. I put the page numbers; that's in there. And it's the least complicated way I could send it to the state judges. And if I was a state judge, I might, frankly, feel a little irritated to receive it this way. But it's really not my fault it's in this setting.

But what I'm trying to do is to sever off cases that should not have been brought together, or not appropriate together, in my view, at least under severance, they were appropriate to sever; and then there wasn't federal

jurisdiction, and those were the med mal cases and the Beaufort County cases, and now the Wright defendant cases. And what I wanted to keep here, and I wanted us to sort out today and focus on, is sort of how we deal with these claims involving the adoption of these children, and the roles of these different parties -- these third-party defendants in that particular -- in the adoption.

I've seen an allegation that one of the adoptive parents had a prior conviction for child abuse, which I think everybody would agree, probably not a best candidate for adoption. And we're going to try to sort out what kind of claims exist there. But I've been trying to manage it in a way that we can actually focus on what I think is Mr. Butcher's primary concern.

Is that fair, Mr. Butcher?

MR. BUTCHER: Yes, your Honor.

And the plaintiff didn't speak with the Wright Directions attorneys beforehand. And what I said is -- and I know this is a state issue that doesn't particularly concern you, but we're going to do a stay on any responsive pleadings and ask for a status conference. But one of the things I didn't get from, you know, the Court's e-mail and the different orders was the fact that it was an order for separate case numbers at the state level.

THE COURT: I don't tell the State how to do its case

numbers --

MR. BUTCHER: Okay.

THE COURT: -- but everyone is coming from -- I separated them. So, that distinct case number is remanded. And I will presume that a state judge would take that, and that would be a separate case number. But I don't tell the State -- I don't tell the county clerks in these state courts how to number their cases. But, yes, I anticipated on the med mal cases that there would be a separate case number; for the Beaufort County claims, there would be a separate case number; and for the Wright defendant cases, there would be a separate case number. And I would think the state judge, right off, would say: You need to file an amended complaint. It clearly says "for their claimant" in each one of these. And then the defendants can respond appropriately with motions to dismiss, answers, or whatever they wish.

MR. BUTCHER: Okay. Thank you, your Honor.

THE COURT: Yes. And I hope I've made it clear, I'm not -- and let me say this: I wasn't entirely happy how I was sending it to the state courts, but every other alternative was worse.

Mr. Davis, good to see you, sir.

MR. DAVIS: Good to see you, your Honor.

THE COURT: I was trying to send you to Jasper County, which I figured you'd be on the way to Beaufort in

about an hour.

MR. DAVIS: My whole purpose for being here was to find out if the medical malpractice case was severed and sent back down to --

THE COURT: It is. It's been severed and sent.

MR. DAVIS: Okay. May I be excused?

THE COURT: And you may be excused. It's always good to see you, sir.

MR. DAVIS: Yes, sir. Thank you.

THE COURT: Mr. Shahid cannot leave.

MR. SHAHID: I was trying to hide behind him.

MR. DAVIS: Yeah, I see.

MS. MORRISON: Well, your Honor, I think the Wright Directions is --

THE COURT: We'll do the Wright Directions and get out of the courtroom while the going is good.

MR. FUERST: Thank you, your Honor.

MS. MORRISON: Thank you, your Honor.

THE COURT: Okay. Then we've got the DSS folks.

MR. DENNIS: Yes, your Honor. Robert Dennis, for the Department of Social Services.

THE COURT: DSS. Okay. And you're representing all the --

MR. DENNIS: Yes, your Honor, all of the --

THE COURT: -- DSS.

Okay. Let's talk a little strategy about the best way to organize this so that the parties can -- the defendants can respond to understand what the allegations are, and respond. So, it seemed to me that the original Fourth Circuit case that was 9: 21-479, and then 9: 22-1874, that's the remaining things I didn't sever, which were all relating to the adoption and treatment of the children. I wanted your reaction to consolidating them into one action.

Mr. Butcher, do you oppose that?

MR. BUTCHER: No objection, your Honor.

THE COURT: Do any of the defendants oppose that?

MR. DENNIS: (Negative Nod.)

THE COURT: I think it's in everybody's interest to have it in one place.

Okay. So, the next issue, it seems, Mr. Butcher, that everyone would be helped if you would file an amended complaint and read that line in the federal rules, a short statement of your claim, okay? I mean, it really is overwhelming everybody when you file so much.

MR. BUTCHER: I understand. I would just -- *Bell vs. Cromley* and --

THE COURT: I hear you, but, you know, sometimes more is less. And it's really hard, when it's 300 and something pages long, to figure out what the claims are.

MR. BUTCHER: Yes, sir.

THE COURT: And so, I want to encourage you to do it. I think that should be the first order of things.

MR. BUTCHER: Yes, sir.

THE COURT: Let's talk a little bit about theory here for a second.

MR. BUTCHER: Yes, sir.

THE COURT: And I'm not going to fuss with you. The Fourth Circuit helped you a little bit, came up with a theory I didn't the least understand. It was argued. Maybe it was that thousand-page brief you filed on unique state functions that got me distracted, but I don't think so. But it's a theory that ought to be developed, which is: If the children were wards of the state -- thus, in state custody -- were they entitled to certain constitutional protections, and were those protections provided them?

Isn't that the claim the Fourth Circuit was discussing?

MR. BUTCHER: That's always been the complaint.

THE COURT: I never quite understood it the way -- it was unique state function adoption, which is to the contrary. I'm not going to worry about it. I want these kids, if they've got a claim, I want them to be able to assert it, okay? But --

MR. BUTCHER: I think, your Honor, the other thing was the red herring in saying "adoption." Adoption doesn't

happen until that relationship is severed. They're foster children, and it's foster care, and it's the Doe case until the day of adoption. The pre-adoptive placement is at foster care.

THE COURT: So, who is your understanding, Mr. Butcher? I understand that the child -- the children are, theoretically, wards of the state of Ohio because they're in foster care. Isn't that your theory?

MR. BUTCHER: Yes, sir.

THE COURT: And when they come to South Carolina, who are they under the supervision of? If you don't know, you may need to get discovery to answer that question.

MR. BUTCHER: So, we've got a few documents. But legally, statutorily, they remain in the custody of Ohio. And South Carolina is supposed to have a supervisory role in it, where the caseworkers do a lot of the groundwork. Now, in this instance, though, they hired Adoption Advocacy --

THE COURT: Who's "they?" Ohio?

MR. BUTCHER: Ohio.

THE COURT: Right.

MR. BUTCHER: But they still went through the ICPC process. And we'll see that paperwork later on --

THE COURT: Okay.

MR. BUTCHER: -- where they applied and put the child in South Carolina. So, South Carolina knows the child is

there. And that should trigger things South Carolina does to make sure the placement is safe. So, we've got to figure out what the role is of Adoption Advocacy in between those two parties.

THE COURT: Right. But you assert basically that Adoption Advocacy is qua the state, basically, right?

MR. BUTCHER: Yes, sir.

THE COURT: It becomes the state.

MR. BUTCHER: Yes, sir.

THE COURT: And then, do you have enough information to have an idea about what role DSS had?

MR. BUTCHER: Not at all, your Honor. And it's really different in every single case.

THE COURT: Okay.

MR. BUTCHER: And it can vary by county. So, based on my experience in doing these cases, I may not -- I mean, they may do something -- *Oconee vs. Charleston County* -- completely different. Because, once it gets to the state, they kick it down to the county to do stuff, and then it can get squirrely.

THE COURT: Let me ask. Ms. Stewart, what's your understanding of sort of the role of Adoption Advocacy in this versus the State of Ohio and South Carolina DSS?

MS. STEWART: Well, your Honor, I will say I'm a little late to the party on this.

THE COURT: I think we all are a little bit, so don't worry.

MS. STEWART: So, I won't pretend to have as much of an understanding as a lot of these other folks do. And I'm certainly looking forward to fully briefing these issues before the Court. I know that they've been pretty heavily litigated before I became involved.

THE COURT: Not on these issues.

MS. STEWART: Yes, sir. I understand.

So, I mean, my understanding is, you know, pretty similar to what Mr. Butcher mentioned just now, that the Franklin County Department of Social Services hired Adoption Advocacy to place the children in foster homes here in South Carolina. I don't know that I have anymore information for the Court than that at this point.

THE COURT: Well, I think that's why they call discovery what it is, it's discovery.

Mr. Dennis, how about SCDSS? What is your understanding of the role?

MR. DENNIS: Yes. So, I will echo what both counsel said. But from my understanding, DSS, because the children are technically in the custody of Adoption Advocacy, do not have a lot to do with them because those children are not, you know, wards of South Carolina, they are being still wards of Ohio through a private company who places them for adoption.

THE COURT: Mr. Shahid, what's your understanding about the role of the Franklin Children Services?

MR. SHAHID: You know, this is sort of like being at an expensive dinner, and whoever gets the last bill, gets stuck. So, I think I'm like the last person at the end of the table. You know, this is going to be a classic example of finger pointing and passing the buck, right. I think that's just a reasonable expectation --

THE COURT: Well, I do think everybody generally does not know the facts yet, right?

MR. SHAHID: Right. And I think it's -- it's a very -- I've read this opinion a couple of times. And I think it's somewhat interesting, the twists and turns with it. So, I really don't know. I mean, I think you are right about discovery is not going to sort of flush a lot of these issues out, unfortunately. But there was sort of the passing of the buck when these children got --

THE COURT: And somebody's got a duty -- I mean, the moment I heard Judge Harris -- I have listened to the oral argument -- I thought she had a very good point. And it was not a point I had heard argued before, and that is the status of the children as wards of the state, as wards of the State of Ohio, that Adoption Advocacy was the agent of nondelegable duty, constitutional duty. And it's ambiguous to me. From that point: Does DSS have a role? What role should it have

had even if it didn't have a role? And I think that gets us to: How do we manage this?

You know, we haven't seen a complaint yet, so we don't know about motions to dismiss. But I've got to tell you, practically, if we can make a short and plain statement on the theories we've talked about, I mean, you can file any motion you want. It seems to me, y'all should answer and let's move on with discovery and let's figure out what the facts are, and if there's dispositive motion, do them as a form of summary judgment. Because, I don't think the facts here are very clear.

You know, I'm going to tell y'all something that most of you probably know. You know, there was this case, *DeShaney*, which, you know, limited state's liability for the violence of third parties. But there are exceptions to *DeShaney*. One of them is: You're a ward of a state. Another one is: State-created danger.

Am I right, Mr. Butcher? All these are the basic theories, right?

MR. BUTCHER: Yes, your Honor.

THE COURT: How to get around *DeShaney*. And we may run into a tension between the party that has the children as a ward and those who do not, you know. That may be the issue. But we don't know, because I don't think we know what role DSS had and did they treat them as some type of agent of Ohio

itself. I don't know. I have a lot more questions than I have answers. And I suspect everybody's in that boat.

So, Mr. Butcher, how long before I can get you to file an amended complaint so we can go ahead and get this thing started?

MR. BUTCHER: I'm really thinking of -- I have a lot of deadlines coming up also. And I know this sounds weak, but my daughter is moving in on the 21st with her husband and two children. And that is going to ruin my life for at least the week until they move out. And so, is it --

THE COURT: I'm going to have to ask your wife to do all the work then -- I'm talking about the legal work.

MR. BUTCHER: Yep. Is April 5th okay?

THE COURT: April 5th is fine.

MR. BUTCHER: And if I can do it earlier, I will.

THE COURT: Okay. And then, you know, I'm not going to tell the other folks about how you plead, but I really think, at some point, we need to get on with the discovery. And I don't know what he's going to put in the complaint, but you're not going to waive anything by proceeding and taking discovery and then dealing with -- other than something like jurisdiction or something, which I think we've kind of sorted out some jurisdictional issues already. If there's a 1983 claim, obviously there's jurisdiction, there's potentially related supplemental state claims, so --

MR. BUTCHER: And, your Honor, I just want to -- I want to reduce it and I really want to make it the smallest complaint possible. And the only reason I would try and bulletproof the facts wouldn't be this Court, it would be the Fourth Circuit and Judge Wilkinson or something. I have this fear that it's just going to -- you know, sua sponte, you know, didn't allege enough facts.

THE COURT: Yeah. But you're not going to have a problem with me. And you've got to go develop your facts and a dispositive motion, which I think might as well be summary judgment. You can lay all of this out, and you should be protected.

MR. BUTCHER: Yes, sir. Okay.

THE COURT: I just think you create more problems for yourself by making it so complicated.

MR. BUTCHER: Yes, sir. And also, you know, South Carolina doesn't have as much full contact 83 litigations, where you have parties appealing at the motion-to-dismiss stage. So, I mean, that's another benefit that we have.

THE COURT: I'm trying to persuade them not to do a motion to dismiss and try to get on with discovery, because then, to the extent it sorts out that certain parties didn't do what they needed to do, that's why we have mediation, to try to work it out. If, in fact, there's nothing to it, then we can move on with dispositive motions, and if there's still

factual dispute, we have a trial. It's not a big deal. That's all. We've just got to get the litigation on a kind of coherent path so that these issues can be sorted out. And part of it was clearing the courtroom, right, just getting down to the parties that really matter here.

And I would say, for the sake of the state judges, Mr. Butcher, you need to go in and do amended complaints in every one of those cases.

MR. BUTCHER: Yes, sir.

THE COURT: Because the state judges are going to be completely befuddled by this 323-paged complaint. And the allocation of -- the way I did it, I mean, it's going to be confusing if you don't -- number one: If you recognize that you can't assert the false claims cases against Wright Directions through the children -- if, in fact, you conclude that, that simplifies a lot, because all those motions were those claims.

MR. BUTCHER: Yes, sir.

THE COURT: But that's up to you. And, you know, I was a litigator and I would have potential parties I could sue, and I would evaluate: Do I really want to pick a fight with everybody in the bar? You know? Do I really want to go in there and brawl with everybody, or do I want to pick my best fight and focus on that? And, you know, I did a lot of med mal litigation. I don't know how much you've done.

You're about to get yourself on a buzz saw on med mal litigation that is incredibly complicated. And maybe there's something about this case that the doctors knew and didn't act. But if you don't have strong evidence, you might just want to punt on that. That's just a little unsolicited advice from 30 years litigating med mal cases, okay?

MR. BUTCHER: Yes, sir.

THE COURT: I know these lawyers. I mean, I know Mr. Davis very well. He was a formidable opponent. And these are good lawyers. They work hard, and they know their game. Like, you might know this area --

MR. BUTCHER: Yes, sir.

THE COURT: -- they know med mal, okay? And if it's a good plan, go for it. But, if on reflection, that's not the best use of your attention, then, you know, you need to make some strategic call about that, because there's sufficiency of effort, right?

And I always thought from the beginning of this that there was a claim that was involving how these children got adopted by these people with a criminal record, right? I mean, that seems to me to be the question in the case.

MR. BUTCHER: Yes, sir.

THE COURT: And every time you get away from that, you're making yourself -- you're taking away your best shot. That's a little unsolicited advice. But defense lawyers may

not like my advice to you on that. But I think it helps everybody to say: Let's just sort of figure out who has a role in this and what is their role, right. I mean, there's a scenario where the defendants have no liability, there's a scenario where everybody has liability, and there's a scenario where some may have liability and some may not.

So, what I'd love to do is see as quickly as possible a complaint, a bunch of answers, a scheduling order, and y'all start taking depositions and figure out what's going on. If you want to have a status report after that to tell me what y'all are learning, I'm glad to talk to you and help you walk through this, if there's a way to get it resolved earlier rather than later.

Okay. Are there further matters to come before the Court at this point, Mr. Butcher?

MR. BUTCHER: Are we going to have another conference after the initial pleading stage regarding the discovery and Rule 16?

THE COURT: If you want to. I think most of my lawyers work it out without me doing a Rule 16 conference. I'm glad to do it if you think it would be helpful, but I frankly think you could talk to these lawyers and say: Here are the people I want to the depose, let's get going. And I don't think you're going to have a bunch of a pushback. Maybe I'm missing something, but if you do, we can certainly do it.

I don't oppose it, it's just not commonly done in this district. Some districts, you know, they have a Rule 16 conference -- and this is kind of a Rule 16 conference. I'm kind of sorting all this out at the preliminary phase to get the case on track. But if you want it, all you have to do is ask for it.

MR. BUTCHER: Okay. Yes, sir. All right. Let's go ahead and change. I'll get my amended complaint done by March 20th. I'm going to do it before my kids come. Yes, sir.

THE COURT: Okay. Okay. Defense counsel, anyone have any thoughts, ideas, suggestions?

MS. STEWART: No, your Honor.

MR. FUERST: No, your Honor.

THE COURT: Okay. Folks, if y'all need me, I'm around, okay? Thank you. This hearing is adjourned.

MR. BUTCHER: Thank you, your Honor.

MR. FUERST: Thank you, your Honor.

MR. SHAHID: Thank you, your Honor.

* * * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/Lisa D. Smith, 12/20/2023

Lisa D. Smith, RPR, CRR Date